IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KINTANELLE D. PALMER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-06-992 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 19) and Defendant's Response to Plaintiff's Motion for Summary Judgment (Docket Entry No. 21).[2] The court has considered the motion, all relevant filings, the administrative record, and the applicable law.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

**I. Case Background**

**A. Procedural History**

In this action, Kintanelle Palmer ("Plaintiff") seeks review of the decision of the Commissioner of the Social Security

---

[1]      The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgement, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 14.

[2]      Although denominated only as a response to Plaintiff's motion for summary judgment, Defendant's response argues that the ALJ's decision is supported by substantial evidence and requests that it be affirmed. Accordingly, the court considers the response to be a cross-motion for summary judgment.

Administration ("Commissioner") denying her application for disability insurance payments under Title II of the Social Security Act ("the Act"). Plaintiff protectively filed her application on July 1, 2003, alleging an onset of disability on May 1, 1996; her insured status expired on June 30, 1998.[3]

After Plaintiff's application was denied at the initial and reconsideration levels, she requested a hearing before an ALJ.[4] The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on March 30, 2005.[5] After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on April 26, 2005.[6] The ALJ found Plaintiff was not disabled at any time during the period covered by her application, and Plaintiff appealed that decision on June 16, 2005.[7]

On February 17, 2006, the Appeals Council denied Plaintiff's request for review of the ALJ decision, thereby making the ALJ's decision the final decision of the Commissioner.[8]

Plaintiff filed this timely civil action pursuant to 42 U.S.C.

---

[3]   Transcript of the Administrative Proceedings ("Tr.") 304.

[4]   Tr. 23.

[5]   Tr. 26.

[6]   Tr. 15-23.

[7]   Tr. 11.

[8]   Tr. 5.

§ 405(g) for judicial review of the Commissioner's unfavorable decision.

**B. Factual History**

### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born on July 14, 1946, and was forty-nine years old on the date of the alleged onset of disability.[9]  Plaintiff possesses a high school education and completed eighteen credit hours at the University of Houston in retail credit and collections courses.[10]  She has prior work experience as an alterations seamstress/garment fitter, vacuum demonstrator and babysitter.[11]

### 2. Plaintiff's Testimony

Plaintiff reported that she suffers from arthritis in her knees.  In 1998, she felt "fine," but occasionally, her right knee would give way, approximately once or twice a week.[12]  Her doctor prescribed Naprosyn for the pain.[13]  Plaintiff also participated in water therapy three times per week.[14]  She stated that she began using a cane in late 1997 or 1998.[15]  Plaintiff noted that she needs knee surgery and has been on a waiting list for two years.

Plaintiff acknowledged that she presently weighed

---

[9]     Tr. 304.
[10]    Tr. 305.
[11]    Tr. 312-13.
[12]    Tr. 308.
[13]    This is a brand name for naproxen sodium.
[14]    Tr. 308.
[15]    Tr. 309-10.

approximately two hundred and fifty pounds and had been told to lose weight.[16]   She explained that she had lost one hundred pounds at one point but it did not make her legs feel any better.[17]   She estimated that, in 1998, she could have walked "from [the Mickey Leland Federal Building] all the way down to the corner."[18]

Plaintiff's last job was in 1991 as a garment fitter.   That job required both sitting and standing.[19]

### 3. Plaintiff's Medical Record

The medical records reflected that Plaintiff had a history of osteoarthritis of the knees.   The earliest medical records in the file, X-rays taken on September 12, 1996, at the Harris County Hospital District ("HCCD"), showed post-surgical changes of the knees, mainly on the right side.[20]   There was an osteophyte formation from the tibial spine, tibial plateau and femoral chondyle.   Osteoarthritic changes were observed at the femoral patellar joint.   Only small osteophytes were observed on the left knee.[21]

On September 30, 1996, Plaintiff requested a handicapped placard for her car.   Her primary care physician was not available,

---

[16]   Tr. 310.
[17]   Id.
[18]   Tr. 311.
[19]   Id.
[20]   Tr. 206.
[21]   Id.

4

and Plaintiff was told to return the following day.[22]  On October 1, 1996, Plaintiff returned to the clinic and filled out the paperwork for a handicapped placard.[23]  She made no other requests for services.[24]

On December 12, 1996, Plaintiff returned to the clinic for medication refills for Flexeril, Naproxen, Nicoderm, Tylenol and Maalox.[25] Clinic notes reported her weight as 279 pounds.

On March 11, 1997, Plaintiff had a follow-up nutrition visit for weight loss.  She reported that she had lost seventy-five pounds and was trying to quit smoking.[26]  However, her weight was recorded as 279 pounds.

On March 20, 1997, Plaintiff returned to the clinic for a routine visit.  She complained of depression and bilateral knee pain.  She was prescribed a knee brace, Elavil, an antidepressant, and Capsaicin, a topical analgesic.  She weighed 293 pounds.

Plaintiff was seen by the physical therapy department on April 21, 1997, for exercises to stabilize her knee joints.[27]

In May 1997, Plaintiff returned to the clinic complaining of sharp knee pain that worsened with walking.[28]  Clinic notes indicated that she had a history of osteoarthritis and obesity.

---

[22]   Tr. 205.
[23]   Tr. 204.
[24]   Id.
[25]   Tr. 203.
[26]   Tr. 202.
[27]   Tr. 197.
[28]   Tr. 194.

She was prescribed neoprene sleeves for knee support.[29]

A June 1997 clinic note indicated that Plaintiff was compliant with her exercise program and had a functional range of movement in her knees.[30]  Plaintiff returned to the clinic on July 1, 1997, complaining of a rash.  Her weight was recorded as 296 pounds.  A September 30, 1997, clinic note reported that she was doing well with pool therapy.[31]  She was continued on Naprosyn.  She weighed 298 pounds.

Plaintiff returned to the clinic on March 16, 1998, for evaluation of her arthritis.[32]  No changes were noted.  She complained of a cough and bronchitis, noted that she was "doing well," and stated that she had started smoking again.[33]  She weighed 287.8 pounds.

On June 15, 1998, Plaintiff again returned to the clinic for a checkup and complained of pain in her legs.[34]  She reported that her right leg "gives out on her."  The clinic note indicated that she was "doing well."[35]  Her prescription for Naprosyn was continued.  She weighed 290 pounds.

Plaintiff's insured status expired on June 30, 1998. Plaintiff's post-insured-status medical records show continuing leg

---

[29]   Id.
[30]   Tr. 186.
[31]   Tr. 182.
[32]   Tr. 179.
[33]   Id.
[34]   Tr. 178.
[35]   Id.

pain and depression.

**4. Vocational Expert's Testimony**

After reviewing the file and listening to the testimony, the vocational expert ("VE"), Kate Gilreath ("Ms. Gilreath"), testified that Plaintiff's prior employment as a seamstress/garment fitter was light, skilled work, her prior employment as a vacuum demonstrator was light, semi-skilled work, and her prior job as a babysitter was light, semi-skilled employment.[36]

The ALJ asked Ms. Gilreath to assume that Plaintiff had exertional limitations of not lifting more than ten pounds frequently and twenty pounds occasionally, standing or walking for a maximum of thirty minutes at a time, needing a sit or stand option, occasional stooping, kneeling, or crouching, and no climbing ropes, ladders or scaffolding, or crawling. Based on those limitations, Ms. Gilreath opined that Plaintiff could perform her past relevant work as a garment fitter.[37]

Alternatively, Ms. Gilreath also stated that if Plaintiff were further limited to standing or walking a maximum of four hours per day, she could still perform her past relevant work as a seamstress/garment fitter and, in addition, had the residual functional capacity to work as a small products assembler, a repair operator, photocopy machine operator, or at other sewing

---

[36]     Tr. 313.
[37]     Tr. 314.

positions.[38]  If Plaintiff could only stand or walk up to two hours per day, Ms. Gilreath testified that she could not perform her past relevant work.

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner to deny disability benefits is limited to two issues: 1) whether substantial record evidence supports the decision; and 2) whether proper legal standards were used to evaluate the evidence . Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000); Brown, 192 F.3d at 496.  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. Brown, 192 F.3d at 496.  The Commissioner is given the responsibility of deciding any conflicts in the evidence.  Id.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405 (g).  Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  Johnson

---

[38]    Id.

8

v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In other words, the
court is to defer to the decision of the Commissioner as much as is
possible without making the court's review meaningless.    Brown,
192 F.3d at 496.

The legal standard for determining disability under the Act is
whether the claimant is unable "to engage in any substantial
gainful activity by reason of any medically determinable physical
or mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than twelve months."  42
U.S.C. § 423(d)(1)(A).  To determine whether a claimant is capable
of performing any "substantial gainful activity," the regulations
provide that disability claims should be evaluated according to the
following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial
> gainful activity, will not be found to be disabled no
> matter what the medical findings are; (2) a claimant will
> not be found to be disabled unless he has a "severe
> impairment;" (3) a claimant whose impairment meets or is
> equivalent to an impairment listed in [20 C.F.R. Pt. 404,
> Subpt. P, App. 1 ("the Listings")] will be considered
> disabled without the need to consider vocational factors;
> (4) a claimant who is capable of performing work that he
> has done in the past must be found "not disabled;" and
> (5) if the claimant is unable to perform his previous
> work as a result of his impairment, then factors such as
> his age, education, past work experience, and residual
> functional capacity must be considered to determine
> whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

To be entitled to benefits, a claimant bears the burden of
proving he is disabled within the meaning of the Act.    Wren v.

Sullivan, 925 F.2d 123, 125 (5th Cir. 1991).  By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth.  Brown, 192 F.3d at 498; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled.  Greenspan, 38 F.3d at 236.

### III. Analysis

In the present case, the ALJ found that Plaintiff failed to establish the presence of a disability before the expiration of her insured status.  And, while the ALJ found that Plaintiff's osteoarthritis and obesity were "severe" impairments, he also found that they did not meet or equal any Listing.  The ALJ found Plaintiff's statements concerning her exertional limitations to be not totally credible because she did not take a significant amount of pain medication, had not sought emergency room care on a frequent basis and had not been hospitalized for any condition related to her claim of disability.[39]  The ALJ found that there was no objective evidence that Plaintiff could not perform work at the light exertional level.[40]

Accordingly, the ALJ found that Plaintiff was able to perform her past relevant work as an alterations seamstress.

---

[39]     Tr. 20-21.

[40]     Tr. 21.

Alternatively, the ALJ found that Plaintiff had transferrable skills and had the residual functional capacity ("RFC") to perform work as a seamstress (light, semi-skilled), and assembler (light, unskilled).  The ALJ concluded that Plaintiff had not been under a disability as defined by the Act at any time through the date of the decision.

### A.  Plaintiff's Motion

In her motion for summary judgment, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that the ALJ did not follow proper legal procedures.  Specifically, Plaintiff claims that: 1) the ALJ failed to assess the impact of Plaintiff's obesity at steps three, four and five of the disability analysis; 2) the ALJ failed to apply the sequential evaluation process and erred in determining that Plaintiff could perform her past relevant work; 3) the ALJ failed to consider Plaintiff's diagnosis of depression as a severe impairment and failed to call a medical expert to testify; and 4) the ALJ failed to consider the use of a cane and psychological limitations in his hypothetical questions to the VE.

### 1.  Obesity

Plaintiff first contends that the ALJ erred by failing to properly assess Plaintiff's obesity as a disabling factor under Social Security Ruling ("SSR") 02-01p.  Plaintiff argues that, because the ALJ did not discuss her obesity at the later steps of

11

his analysis, his opinion is flawed.  The court disagrees.

In the present case, the ALJ acknowledged that Plaintiff was morbidly obese when he found that her obesity constituted a severe impairment at step two of his analysis.  This finding satisfied the portion of SSR 02-01p that required the Commissioner to consider obesity in determining whether a claimant had a medically determinable impairment that was severe.  SSR 02-01p also required the Commissioner to consider obesity as a factor in determining if a claimant could perform her past relevant work.

Here, The ALJ expressly found that Plaintiff's obesity did not meet medical listing 9.09 (obesity) and then properly considered whether Plaintiff's obesity "by itself and in combination with her knee osteoarthritis, ha[d] on her ability to perform daily living and work activities."[41]  The ALJ discussed that, prior to June 30, 1998, Plaintiff was able to stand and/or walk a total of four hours in an eight hour workday with the option to alternate sitting and standing every thirty minutes.  He found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally.  The ALJ further found that Plaintiff could occasionally stoop, kneel and crouch.  Plaintiff's medical records indicated a functional range of motion in her legs, despite her osteoarthritis.[42]  Plaintiff reported that she was able to dress herself, prepare meals, go

---

[41]    Tr. 20.
[42]    Tr. 186.

12

grocery shopping without assistance, drive, and attend church monthly and water therapy three times per week. There was no evidence to suggest that Plaintiff was unable to perform her past relevant work as a seamstress.

The court notes that it was Plaintiff's burden to produce evidence showing that her impairments, whether from osteoarthritis or obesity, met a Listing at step three and that she was unable to perform her past relevant work at step four. Brown, 192 F.3d at 498. This, she failed to do.

The court further notes that the record was devoid of any impairment or limitation that could be attributed to obesity that was not considered by the ALJ in his analysis of Plaintiff's knee pain and limited ability to walk and stand.

Even assuming for the sake of argument, that the ALJ had a heightened duty to develop the record because of Plaintiff's *pro se* status, Plaintiff points to nothing in the record that would raise a suspicion that additional inquiry or medical expertise was required or what it would have shown, if ordered. See Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995)(finding that the ALJ's duty to investigate did not extend to possible disabilities not clearly apparent from the record).

The court finds that the ALJ properly considered Plaintiff's obesity in rendering his decision, even if he failed to cite SSR 02-01p.

### 2. Ability to Perform Past Relevant Work

Plaintiff objects to the ALJ's finding that she could perform her past relevant work as a garment fitter. Plaintiff claims that the ALJ was required to make specific findings and informed comparisons in determining her continued ability to perform her past relevant work. In the present case, the ALJ made findings with respect to Plaintiff's exertional limitations as outlined more specifically above. The ALJ received testimony from the VE that supported his conclusion that Plaintiff was able to perform her past relevant work in light of her present exertional limitations. There is nothing in the record that would suggest that Plaintiff had any limitation not considered by the ALJ that would have impacted Plaintiff's ability to work as a garment fitter/seamstress.

The court finds no merit in Plaintiff's argument that it was error to find her not disabled at step four of the analysis and alternatively proceed to step five. Alternative findings do not render the ALJ's decision inconsistent or contrary to the sequential evaluation process of <u>Bowling</u>, 36 F.3d at 435.

### 3. Depression

Plaintiff argues that the ALJ erred when he failed to consider Plaintiff's depression and/or failed to call an expert to testify about Plaintiff's non-exertional limitations stemming from her depression. In support, Plaintiff lists twelve clinic visits that

14

note that Plaintiff complained of depression, commencing in March 1997.

Plaintiff correctly points out that she mentioned depression at a routine check-up for her osteoarthritis on March 20, 1997.[43] Significantly, however, she received a one-time prescription for Elavil and no referral for any psychological service at that time. The medical records do not show that the Elavil prescription was ever refilled.  Depression was not noted in her medical records again until August 12, 1999, well after her insured status expired.[44]  At that time she was prescribed a different medication. There is nothing in the record to suggest that Plaintiff had a severe impairment related to depression during her insured status.

### 4.  Defective Hypothetical Questions.

Plaintiff argues that the ALJ's omissions of Plaintiff's use of a cane and certain non-exertional limitations from his hypothetical questions were errors, requiring reversal of the decision.

A hypothetical question posed by the ALJ need only incorporate those limitations recognized by the ALJ.  Bowling, 36 F.3d at 435; Morris v. Bowen, 864 F.2d 333, 336 (5th Cir. 1988).  Here, the ALJ did not recognize that Plaintiff was limited by use of a cane before her insured status lapsed in mid-1998.  Plaintiff testified

---

[43]     Tr. 201.
[44]     Tr. 108.

that she began to use a cane in late 1997 or 1998.  There was no testimony that her use of a cane would have interfered with her past relevant work as a garment fitter/seamstress.  Additionally, the ALJ's findings of exertional limitations in the activities of walking and standing were not inconsistent with Plaintiff's need to use a cane for those activities.  As there is no additional limitation involved in Plaintiff's use of a cane, it was not error to omit it from the hypothetical question.

Plaintiff also complains that the ALJ should have incorporated into his hypothetical certain non-exertional limitations found in the psychological evaluation of Dr. Larry Pollock that was performed for the Texas Rehabilitation Commission in May 1999.[45] In that report, Dr. Pollock listed what he determined to be "functional limitations" of Plaintiff.  Those included "poor academic skills," "very poor reading and spelling skills," "irritability," and "suspiciousness."[46]

The court first notes that Dr. Pollock's findings date from May 13, 1999, and are outside of the insured period.  That alone is enough to warrant their exclusion from the ALJ's consideration. Additionally, Plaintiff failed to explain how these non-exertional limitations, even if present during the insured period, would have

---

[45]     Tr. 219-223.

[46]     Tr. 222.  Dr. Pollock's report also noted Plaintiff's "personal assets" of "average intelligence," "good work history," "motivated to work," and "cheerful disposition."  Tr. 222-23.

any bearing on her ability to perform her past relevant work as a garment fitter or the ALJ's alternative finding that she had the RFC to do sewing or assembly work.

**B. Defendant's Response**

Defendant asserts in her response to Plaintiff's motion for summary judgment that the ALJ's decision should be affirmed because it properly determined that Plaintiff was never under a disability.[47]   Finding no legal error in the ALJ's decision, the court should not disturb it if substantial record evidence supports the ALJ's finding that Plaintiff is not disabled.

The court recognizes the seriousness of Plaintiff's medical condition; however, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla of evidence.   See Carey, 230 F.3d at 135. The court finds more than a scintilla of evidence in support of the ALJ's decision.   Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.   See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his

---

[65]     Defendant's Cross Motion for Summary Judgment, Docket Entry No. 16, p. 13.

determination.   Therefore, ALJ's decision will be **AFFIRMED**.

### IV. Conclusion

For all of the foregoing reasons, the court **DENIES** Plaintiff's Motion for Summary Judgment and **AFFIRMS** the decision of the ALJ.

**SIGNED** at Houston, Texas, this 13th day of February, 2007.

Nancy K. Johnson
United States Magistrate Judge